United States District Court
Southern District of Texas
**ENTERED**
June 06, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ANGELA WILKES, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:22-CV-01591 |
| § | |
| KILOLO KIJAKAZI, § | |
| ACTING COMMISSIONER OF THE § | |
| SOCIAL SECURITY § | |
| ADMINISTRATION, § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Angela Wilkes appeals the Commissioner of Social Security's ("the Commissioner") decision denying her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act ("SSA"). Wilkes has moved for summary judgment, (Dkt. No. 10), arguing that the administrative law judge ("ALJ") erroneously denied her application and the Court should reverse the ALJ's decision, or at least remand this case back to the ALJ. The Commissioner filed a Motion for Summary Judgment, (Dkt. No. 13), asking the Court to affirm the ALJ's decision. After careful review, the Court **AFFIRMS** the decision by the ALJ. Accordingly, the Commissioner's Motion, (Dkt. No. 13), is **GRANTED** and Wilkes's Motion, (Dkt. No. 10), is **DENIED**.

## I. BACKGROUND[1]

In February 2020, Wilkes filed an application with the Social Security Administration (the "Administration") for disability insurance benefits and supplemental security income for an alleged disability that began back in May 2019. (Dkt. No. 10 at 4); (Tr. 259–67).[2] In her Disability Report, Wilkes claimed that a myriad of conditions hindered her ability to work. (Tr. 294–300). She claimed to have "blind or low vision," "back problems," "neck problems," and "shoulder problems[.]" (Tr. 295). Wilkes reported that due to these impairments, she experienced various exertional and non-exertional limitations, including difficulty lifting, squatting, bending, standing, walking, kneeling, climbing stairs, seeing at night, and remembering.[3] (Tr. 318). She elaborated on her impairments at the hearing.[4] (Tr. 89–114).

---

[1] Except where noted, this Section contains only undisputed facts, which have been construed in the favor of the nonmovant. *See Scott v. Harris*, 550 U.S. 372, 378, 127 S.Ct. 1769, 1774, 167 L.Ed.2d 686 (2007).

[2] The parties provided an extensive Administrative Transcript/Record, (Dkt. No. 8, Exhs. 1–98). The Court will cite to the Exhibits 1 through 98 using the administrative record's internal page numbers designated by the Social Security Administration's indexing system, as the Parties do in their Motions. (*See generally* Dkt. Nos. 10, 13, 14).

[3] For the purposes of social security and disability determinations, limitations are classified as exertional, non-exertional, or a combination of both. 20 C.F.R. § 404.1569a(a). Exertional limitations are those that restrict physical strength and affect the individual's remaining ability to perform each of seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling. *Id.* An exertional limitation is "an impairment-caused limitation of any one of these activities." SSR96-9P (S.S.A.), 1996 WL 374185, at *5 (July 2, 1996). Non-exertional limitations are those that are not exertional, such as mental abilities, vision, hearing, speech, climbing, balancing, stooping, kneeling, crouching, crawling, reaching, handling, fingering, and feeling. Environmental restrictions are also considered to be non-exertional. *Id.*

[4] At the hearing, in addition to the problems listed in her application, Wilkes and her counsel referenced various other impairments. These additional impairments include bilateral carpal tunnel syndrome, obesity, depression and anxiety, brain injury, dislocated hip, numbness in the leg and toes, insomnia, memory issues, bowel and urinary incontinence, heart issues, and panic attacks. (Tr. 97–108).

Wilkes's application was denied by the Administration initially in May 2020 and again upon reconsideration in March 2021. (Tr. 115–24, 152). She next filed a claim with the Administration, which was denied by the ALJ on November 23, 2021. (Tr. 16–31). Wilkes requested review of the ALJ's decision by the Appeals Counsel (the "Counsel"), but the Counsel denied her request. (Tr. 6–9). The ALJ's holding then became a final decision appealable through a civil action filed in the federal judicial district where the claimant lives. (*Id.*); *see* 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

As the factfinder, the ALJ "has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). Courts can neither make credibility determinations nor re-weigh the evidence. *Randall v. Astrue*, 570 F.3d 651, 662 (5th Cir. 2009) (per curiam). This Court's review is limited to determining whether the agency applied the proper legal standard and, if so, whether substantial evidence supports its decision. *Higginbotham v. Barnhart*, 405 F.3d 332, 335 (5th Cir. 2005). "Substantial evidence is more than a scintilla, less than a preponderance, and is such that a reasonable mind might accept it as adequate to support a conclusion." *Randall*, 570 F.3d. at 662 (internal quotation marks omitted) (quoting *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992)). A finding of "'no substantial evidence'" occurs "only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988) (per curiam) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

## III. LEGAL STANDARD

In evaluating a claim for disability insurance or supplemental security income, the Commissioner employs a five-step evaluation process that assesses whether: (1) the claimant is presently engaged in substantially gainful activity; (2) the claimant has a severe medical impairment with sufficient duration; (3) the medical impairment meets or equals one listed in appendix 1 to subpart P of part 404 of the social security regulations; (4) the medical impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantially gainful activity.[5] 20 C.F.R. § 416.920(a)(4); *see also Muse*, 925 F.2d at 789. If, at any point in the five-step review, the ALJ finds that a claimant is not disabled, that finding "is conclusive and terminates the analysis." *Randall*, 570 F.3d at 653 (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

With respect to step two of the analysis, Section 416.922(a) defines an impairment as non-severe "if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 416.922(a). The Fifth Circuit has consistently deemed an impairment to be non-severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability

---

[5] Disability insurance is governed by Title II, 42 U.S.C. §§ 404 *et seq.*, and Social Security insurance ("SSI") benefits are governed by Title XVI, 42 U.S.C. §§ 1381 *et seq.*, of the SSA. But while the two are technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). Accordingly, while the Court may refer to the applicable statutes and regulations governing one of Title II or XVI, the standards enumerated apply with equal force to all aspects of Wilkes's application.

4

to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984) (alteration in original) (internal quotation marks omitted)).

IV. **DISCUSSION**

In the November 23, 2021 decision, the ALJ determined at step one that Wilkes had "not engaged in substantial gainful activity since May 1, 2019," and the Parties do not dispute this finding. (Tr. 20); (*see generally* Dkt. Nos. 10, 13). At step two, the ALJ determined that Wilkes had severe impairments with respect to her obesity, major depressive disorder, generalized anxiety disorder, lumbar and cervical degenerative disc disease, and a left shoulder fracture. (Tr. 21). Her alleged vision problems, hypertension, diabetes mellitus, hyperlipidemia, right shoulder strain, spasmodic torticollis, and bilateral carpal tunnel syndrome were deemed to not be severe, (*id*.), and her purported brain injury and heart attack were counterweighed by both the lack of medical records and tests that indicated normalcy, (Tr. 21–22). At step three, the ALJ found that none of the impairments meet or equal one listed in appendix 1. (Tr. 21–24). The ALJ assessed Wilkes's Residual Functional Capacity ("RFC") before finding at step four that Wilkes could perform some light work, including past relevant work as a merchant patroller, billing clerk, medical record clerk, and administrative clerk, as generally performed. (Tr. 25–31). Because the ALJ's finding at step four meant that she was not disabled under the SSA, the ALJ did not analyze the fifth and final step—whether Wilkes was capable of performing any other substantially gainful activity. (*See* Tr. 31).

In her Motion, Wilkes broadly makes three arguments. First, she contends that the decision should be reversed or at least remanded because the ALJ relied on the wrong legal standard in determining the severity of her impairments. (Dkt. No. 10 at 7–9). Second, she argues that the ALJ's RFC finding is unsupported by substantial evidence. (*Id.* at 9–14). And third, she claims that the ALJ erred by relying on the testimony of a vocational expert because the testimony was inconsistent with the Dictionary of Occupational Titles ("DOT"). (*Id.* at 15–17). The Commissioner refutes these arguments and asks the Court to affirm the ALJ's decision. (Dkt. No. 13-1).

### A.  WHETHER THE ALJ APPLIED THE CORRECT LEGAL STANDARD

Among her contentions, Wilkes raises a *Stone* challenge arguing that the ALJ committed legal error at the second step by applying the wrong standard when assessing the severity of her impairment. (Dkt. No. 10 at 7–9) (citing *Stone*, 752 F.2d at 1101). In response, the Commissioner argues that the ALJ applied the correct standard and, even if she did not, any error is harmless. (Dkt. No. 13-1 at 2–4).

#### 1.  The Severity Standard

The relevant regulation on the severity of impairments provides: "An impairment or combination of impairments is not severe if it does not *significantly limit* your physical or mental ability to do basic work activities." 20 C.F.R. § 416.922(a) (emphasis added). The Fifth Circuit has held that "the regulatory definition of 'severe impairment' is inconsistent with how the [SSA] defines disability." *Cardona v. Kijakazi*, 3:21-CV-00142, 2022 WL 16953665, at *3 (W.D. Tex. Nov. 14, 2022) (collecting cases). Instead, in *Stone*, the Fifth Circuit stated that an "impairment can be considered as not severe only if it is a

6

slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone*, 752 F.2d at 1101 (quoting *Estran*, 745 F.2d at 341) (cleaned up).

An impairment is severe if it is more than a "slight abnormality" that "would not be expected to interfere" with a claimant's ability to work. *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (citation omitted). This step requires only that the claimant make a *de minimis* showing. *Id.* When the ALJ's decision is based on nonseverity, the ALJ must apply the legal standard as set forth in *Stone*. 752 F.2d at 1106. The ALJ must provide some indication that they applied *Stone* or an equivalent authority in their written decisions. *Keel v. Saul*, 986 F.3d 551, 555–56 (5th Cir. 2021). Social Security Ruling ("SSR") 85-28, which includes language similar but not wholly identical to *Stone*, "comports with" the *Stone* standard.[6] *Id.* at 556.

Of course, beyond ensuring that the ALJ cited to the correct standard, courts must ensure that the ALJ also applied that standard correctly. *See Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986) ("We remand only where there is no indication the ALJ *applied* the correct standard." (emphasis added)). The Fifth Circuit and its district courts have consistently remanded where the ALJ relied on the "significantly limit" language from the regulation rather than the *Stone* standard. *See, e.g., id.* (remanding case where ALJ used the "significantly limit" language rather than "minimal effect" language); *accord*

---

[6] SSR 85-28 considers impairments to be non-severe if "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." SSR 85-28 (S.S.A.), 1985 WL 56856, at *3 (Jan. 1, 1985).

7

*Cardona*, 2022 WL 16953665, at *4 (holding that the ALJ erred in using the "significantly limit" language because an impairment that does not meet that threshold might still be severe under *Stone* or SSR 85-28); *Hall v. Saul*, 2:20-CV-00128, 2022 WL 1417109, at *2–3 (S.D. Miss. Mar. 23, 2022) (same).

Here, the ALJ cited to both proper and improper severity standards. (Tr. 16–31). The ALJ cited to the "significantly limits" standard in 20 C.F.R. § 416.922(a), which does not comport with *Stone*, and to SSR 85-28, which does. (Tr. 19); *compare Hampton*, 785 F.2d at 1311 *with Keel*, 986 F.3d at 556. But the substance of the ALJ's decision is telling, as it reveals that the ALJ repeatedly relies on the "significantly limits" standard throughout the decision and makes clear that it is the standard against which the ALJ weighed the evidence.[7] (Tr. 15–24). This reliance is in error. But because the ALJ did find some impairments to be severe and progressed beyond the second step, the Court must assess whether this error is harmless. *Keel*, 986 F.3d at 556.

### 2. <u>Harmless Error</u>

A harmless error analysis looks to whether the ALJ considered all impairments, including those deemed non-severe, in determining the claimant's RFC. *See, e.g.*, *Chaparro v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987) (per curiam) (explaining that the *Stone* argument is irrelevant to the disposition of the case if the analysis proceeded beyond step two). Harmless error also exists "when it is inconceivable that a different administrative

---

[7] The ALJ uses the phrase "significantly limit" three times in her decision, each in the context of defining or referencing what constitutes a severe impairment. (*See, e.g.*, Tr. 21) ("The above medically determinable impairments significantly limit the ability to perform basic work activities as required by SSR 85-28.").

8

conclusion would have been reached even if the ALJ did not err." *Keel*, 986 F.3d at 556 (citing *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (per curiam)).

Here, the ALJ's error was harmless for two reasons. First, the ALJ proceeded past step two and expressly stated that she considered the non-severe impairments in the RFC assessment. (Tr. 21) ("Regardless of severity, the undersigned considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity."). The ALJ stated that the decision was based on "careful consideration of the entire record," including "all symptoms." (Tr. 25). And the ALJ undertook a comprehensive review of Wilkes's hearing testimony and medical records to reach the RFC determination. (*See* Tr. 25–31, 32–36). Moreover, for the impairments deemed to be non-severe—vision problems, hypertension, diabetes mellitus, hyperlipidemia, right shoulder strain, spasmodic torticollis, and bilateral carpal tunnel syndrome—the ALJ explored the basis and relevant medical records for each and explained the decision as to why they did not limit her ability to work. (Tr. 21–22).

Second, the error committed by the ALJ was harmless because it is inconceivable that the ALJ would have reached a different decision had the ALJ applied the correct "minimal effect" standard instead of the erroneous "significantly limit" standard. In finding Wilkes's vision problems, hypertension, diabetes mellitus, hyperlipidemia, right shoulder strain, spasmodic torticollis, and bilateral carpal tunnel syndrome to be non-severe at step two, the ALJ explicitly determined that those conditions "cause *no* vocationally relevant limitations." (Tr. 21) (emphasis added). Had the ALJ applied the

9

correct standard, these conditions, which decidedly "cause *no* vocationally relevant limitations," would still be deemed non-severe under a "minimal effect" standard. *See Keel*, 986 F.3d at 557.

In sum, the ALJ erred by applying the wrong legal standard, but the error is harmless because the ALJ considered all relevant impairments. Given the ALJ's finding that Wilkes's non-severe impairments "cause no vocationally relevant limitations," a different result is inconceivable even if she had employed the correct legal standard.

### B.   WHETHER SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S RFC FINDING

The ALJ found that Wilkes retained the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can never climb ladders/ropes/scaffolds; occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; and, occasionally reach in all directions with her left upper extremity. The claimant can never be exposed to work place hazards such as unprotected moving mechanical parts, unprotected heights, and commercial driving. She is able to understand, carry out, and remember detailed, but not complex instructions.

(Tr. 25). Wilkes argues that this determination is unsupported by substantial evidence because the ALJ did not adequately consider two limiting effects: her bilateral carpal tunnel syndrome and use of assistive devices. (Dkt. No. 10 at 9–14). The Commissioner argues that the determination is supported by substantial evidence. (Dkt. No. 13-1 at 2–14).

### 1. Bilateral Carpal Tunnel Syndrome

Wilkes first contends that the ALJ should have found her bilateral carpal tunnel syndrome imposed a greater limitation than what the ALJ determined. (Dkt. No. 10 at 9–11). Wilkes takes issue with the ALJ's finding that this impairment was not severe and caused no vocationally relevant limitations. (*Id.* at 10). She points out the importance of "fingering, feeling, reaching and handling" and how essential these abilities are in most jobs. (*Id.*). Wilkes, in arguing that her condition is more debilitating than the ALJ's finding, references her frequent complaints of pain, test results, hearing testimony, and medically prescribed braces. (*Id.* at 11–12). Wilkes argues that the ALJ should have made further inquiry and established an RFC that adequately reflected this impairment. (*See id.* at 11).

The Court finds that the ALJ's decision is supported by substantial evidence. The ALJ expressly noted that the condition did not cause corresponding clinical deficits. (Tr. 21); (*see* Tr. 1145–46). Moreover, assessments performed both initially and upon reconsideration did not indicate any limitations related to carpal tunnel syndrome, which Wilkes had not even raised as an impairment in her application. (*See* Tr. 116–152). Just as the ALJ is entitled to find this evidence persuasive, the ALJ is conversely entitled to find Wilkes's alleged, unsubstantiated account of the impairment's limiting effects unpersuasive.

### 2. Assistive Devices

Wilkes next argues that had the ALJ properly considered her use of handheld devices, including a walker and cane, she likely would have been found disabled. (Dkt.

No. 10 at 12–14). However, the ALJ rightfully determined that Wilkes did not meet the requirements for a listed impairment under Listing 1.15.[8] (Tr. 22). The ALJ observed that Wilkes used various assistive devices, but not due to a documented medical need. (*Id.*). Rather, these devices were provided only at Wilkes's request and only on a temporary basis. (*Id.*); (*See, e.g.*, Tr. 553, 555–56). And in her April 2020 Function Report, Wilkes did not check the box reflecting that she used any ambulation device. (Tr. 319). Moreover, as to the substantive limitations of any impairments that spurred the use of these assistive devices, the ALJ is entitled to and did give credence to the evidence of Wilkes's lifestyle, including her ability to perform various errands, tasks, and hobbies, as well as the lack of objective evidence as to the alleged severity of her impairments. (Tr. 27–28). The ALJ did not fail to evaluate the impact of the assistive devices in the RFC determination.

## C. WHETHER THE ALJ ERRED BY RELYING ON INCONSISTENT TESTIMONY

Wilkes finally argues that the ALJ should not have relied on the vocational expert's ("VE") testimony. She contends that, when there are conflicts between the VE's testimony and the DOT with respect to various jobs, these conflicts should be resolved through a supplemental hearing. (Dkt. No. 10 at 15–17). For instance, the VE identified that Wilkes had past relevant work as a merchant controller, billing clerk, medical record clerk, and administrative clerk. (Tr. 30, 110–12). Wilkes argues that, while those jobs, by

---

[8] Listing 1.15, which covers disorders of the skeletal spine resulting in compromise of a nerve root, requires at least one of a few forms of medical documentation. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1; 87 Fed. Reg. 42642 (July 18, 2022). Wilkes has not satisfied any of the recognized methods, including a documented medical need, despite her statements on the record that she had been prescribed the assistive devices. (*See* Tr. 100).

definition, require frequent reaching, the VE testimony that Wilkes could perform some of them despite limitations with her upper extremities is inconsistent with the Dictionary of Occupational Titles ("DOT"). (Dkt. No. 10 at 15–16). She also believes that the agency should have assessed the requirements of her past work in particular, and that the ALJ erred by instead assessing that past work in general and "according to the least demanding functions." (*Id.* at 16–17).

The Commissioner argues, and this Court agrees, that no error was committed. (Dkt. No. 13-1 at 11–14). As an initial matter, Wilkes has forfeited her argument. A claimant cannot "scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing." *Carey v. Apfel*, 230 F.3d 131, 146–47 (5th Cir. 2000). In the present case, Wilkes's counsel did not explore any supposed conflicts. (Tr. 112–13). Right before the hearing concluded, the ALJ asked the VE if his testimony was consistent with the DOT, to which the VE answered in the affirmative, and Wilkes's counsel did not comment or otherwise press the issue. (Tr. 113).

Even on the merits, Wilkes is incorrect in suggesting that the ALJ relied on inconsistent testimony by considering the VE's analysis of her job as generally performed. The Fifth Circuit has explained that "[t]he mere inability of a claimant to perform certain requirements of his past job does not mean that he is unable to perform 'past relevant work' as that phrase is used in the regulations; rather, the Commissioner may also consider the description of the claimant's past work as such work is generally performed

13

in the national economy." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (cleaned up); *see also Jones v. Bowen*, 829 F.2d 524, 527 n.2 (5th Cir. 1987) (per curiam) ("[W]e note that simply because appellant cannot perform the lifting requirements of his past job does not mean that he is unable to perform 'past relevant work' as that phrase is used in the regulations." (citation omitted)).

Wilkes's related argument that the ALJ erroneously classified the occupations "according to the least demanding functions" similarly fails, since she takes issue with the ALJ's reliance on the DOT despite the fact that the DOT quite plainly does the opposite. As explained by SSR 00-4p, the DOT lists the *maximum* requirements for a position as it is generally performed, not the full range of requirements. SSR 00-4p (S.S.A.), 2000 WL 1898704, at *3 (Dec. 4, 2000). Applied here, the fact that any of Wilkes's past relevant work might require "frequent reaching" or any other exertional needs under the DOT does not mean that those roles actually require that level of rigor. In fact, while the DOT sets the ceiling, it is precisely the VE's role to make a determination on job demands based on familiarity "with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986) (per curiam). Wilkes fails to demonstrate that the VE offered testimony in conflict with the DOT, since the jobs as actually performed may not involve the exertional needs raised by Wilkes.

## V. CONCLUSION

The Court concludes that the ALJ did not commit reversible error. The Court **GRANTS** the Commissioner's Motion for Summary Judgment, (Dkt. No. 13), and

**DENIES** the Wilkes' Motion for Summary Judgment, (Dkt. No. 10). The decision of the ALJ is **AFFIRMED**. Plaintiff's Complaint, (Dkt. No. 1), is **DISMISSED WITH PREJUDICE**.

It is SO ORDERED.

Signed on June 5, 2023.

*[signature: Drew B. Tipton]*

**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**